IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF OREGON

DAN M. McCONKEY,

                    Plaintiff,                              Civil No. 05-853-ST

          v.                                    FINDINGS AND
                                                              RECOMMENDATION

JO ANNE B. BARNHART,
Commissioner of Social Security,

                    Defendant.

_____

STEWART, Magistrate Judge:

        Plaintiff, Dan M. McConkey, brings this action pursuant to 42 USC § 405(g), seeking

judicial review of the Social Security Commissioner's final decision denying his application for

disability insurance benefits ("DIB") under Title II of the Social Security Act.  This court has

jurisdiction under 42 USC § 405(g).  For the reasons that follow, the Commissioner's decision

should be reversed and this case should be remanded for an award of benefits.

1 -  FINDINGS AND RECOMMENDATION

## BACKGROUND

Born in 1955, McConkey completed high school and worked as a public works maintenance worker between 1987 and 2002.  Tr. 62, 70, 75.[1]  McConkey contends that he has been unable to work since August 31, 2002, due to lung and back pain caused by arthritis and spinal cord compression.  Tr. 62, 69.  McConkey also alleges that his depression contributes to his inability to work.  Tr. 15, 74, 113.  He twice attempted to return to work as a flagger and as a road maintenance worker, but was unable to complete these assignments due to pain.  Tr. 69, 85, 88.

In March 2003, McConkey filed an application for DIB, alleging disability beginning August 31, 2002, due to arthritis in his back.  Tr. 62, 69.  After his application was denied initially and on reconsideration, he requested a hearing before an administrative law judge ("ALJ").  Tr. 34-38, 44-48.  On July 14, 2004, an ALJ held a hearing and received testimony from McConkey (who was represented by an attorney); Lawrence J. Cohen, M.D., a medical expert; and Richard J. Ross, a vocational expert ("VE").  Tr. 215-41.  On September 24, 2004, the ALJ issued a decision finding McConkey not disabled within the meaning of the Social Security Act.  Tr. 12-21.  That decision became the final decision of the Commissioner on May 19, 2005, when the Appeals Council denied McConkey's request for review.  Tr. 4-7. McConkey now seeks judicial review of the Commissioner's decision.

## DISABILITY ANALYSIS

---

[1]  Citations to "Tr." refer to indicated pages in the official transcript of the administrative record filed with the Commissioner's Answer (Docket #9).

The Commissioner engages in a sequential  process encompassing one to five steps in determining disability under the meaning of the Act.  20 CFR § 404.1520(a); *Bowen v. Yuckert*, 482 US 137, 140 (1987) ("*Yuckert*").  Each step is potentially dispositive. The first three steps are not presently disputed.  McConkey challenges the ALJ's evaluation of the evidence and conclusions at steps four and five.

If adjudication proceeds beyond step three the ALJ must first evaluate medical and other relevant evidence in assessing the claimant's residual functional capacity ("RFC").  The claimant's RFC is an assessment of work-related activities the claimant may still perform on a regular and continuing basis, despite limitations imposed by his impairments. 20 CFR §§ 404.1520(e), 404.1545; Social Security Ruling ("SSR") 96-8p. The ALJ uses this information to determine if the claimant can perform his past work at step four.

If  the claimant cannot perform past relevant work, the Commissioner must determine at step five if the claimant is capable of performing other work existing in significant numbers in the national economy.  *Yuckert*, 482 US at 141-2; *Tackett v. Apfel*, 180 F3d 1094, 1098 (9th Cir 1999); 20 CFR § 404.1520.

The initial burden of establishing functional limitations rests upon the claimant.  If the process reaches the fifth step the burden shifts to the Commissioner to show that jobs exist in the national economy in the claimant's RFC.  *Yuckert*, 482 US at 141-2; *Tackett*, 180 F3d at 1098. If the Commissioner meets this burden, then the claimant is not disabled. 20 CFR § 404.1566.

///

**ALJ'S FINDINGS**

3 -  FINDINGS AND RECOMMENDATION

The ALJ found McConkey's ability to work limited by his arthritis and depression.

Tr. 20.  He evaluated McConkey's RFC as follows:

> The claimant retains the residual functional capacity to lift and
> carry up to 10 pounds occasionally. Furthermore, he can alternate
> between sitting, standing and walking for up to 30 minutes at a
> time during an eight-hour day. In addition, the claimant should not
> kneel, squat or reach overhead, and he can only occasionally turn
> his head and neck.  Finally, due to his depression and the side
> effects of his pain medications, the claimant will experience at
> least a 25 percent reduction in his ability to maintain
> concentration, persistence and pace.

Tr. 20.

At step five, the ALJ found that McConkey's RFC did not preclude all work in the

national economy.  Based upon the Medical-Vocational Guidelines and the VE's testimony, the

ALJ identified three examples of unskilled sedentary or light work McConkey could perform:

food and beverage order clerk, assembler/packager, and cashier.  Tr. 20-21.  Accordingly, the

ALJ determined that McConkey was not disabled under the Act at any time through the date of

his decision.  Tr. 21.

## STANDARD OF REVIEW

This reviewing court must affirm the Commissioner's decision if the Commissioner

applied proper legal standards and the findings are supported by substantial evidence in the

record. 42 USC § 405(g); *Batson v. Comm'r for Soc. Sec. Admin.*, 359 F3d 1190, 1193 (9th Cir

2004).  In reaching a decision, this court must weigh "both the evidence that supports and

detracts from the Commissioner's conclusion."  *Magallanes v. Bowen*, 881 F2d 747, 751 (9th Cir

1989), citing *Martinez v. Heckler*, 807 F2d 771, 772 (9th Cir 1986).  However, this court "may

not substitute its judgment for that of the Commissioner."  *Edlund v. Massanari*, 253 F3d 1152,

1156 (9th Cir 2001).  Variable interpretations of the evidence are insignificant if the

Commissioner's interpretation is a rational reading.  *Magallanes*, 881 F2d at 750; *see also*

*Batson*, 359 F3d at 1193.

## DISCUSSION

McConkey contends the ALJ erred by not giving controlling weight to the opinion of his

treating physician and by rejecting McConkey's testimony concerning his limitations due to

pain.  As a result, McConkey argues that the ALJ wrongly determined his RFC.  He also claims

that the ALJ erred by relying on an incomplete hypothetical question to the VE.

## I.    Treating Physician's Opinion

On April 29, 2004, Henry H. Rinehart, M.D., wrote that McConkey was "Disabled -

Unable to work" due to degenerative disc disease of the thoracic spine.  Tr. 202.  The ALJ

concluded that this opinion "cannot be afforded significant weight" because:

> There is no evidence in the record that Dr. Rinehart is one of the
> claimant's treating medical sources.  Furthermore, his opinion is so brief
> and conclusory that it lacks strong persuasive weight.  It is neither
> supported by medically acceptable clinical or laboratory techniques, nor
> does the other substantial evidence in the case record support it.

Tr.  17-18.

McConkey claims that the ALJ erred because Dr. Rinehart was his treating physician

whose opinion should have been given controlling weight.

///

### A.    Legal Standard

The relative weight afforded the opinion of a physician depends upon his or her

opportunity to observe and to get to know the patient as an individual.  *Lester v. Chater*, 81 F3d

821, 830 (9th Cir 1996). Generally, a treating physician's testimony is given more weight than that an examining physician's opinion, and an examining physician's opinion is given more weight than a non-examining physician's opinion. *Thomas v. Barnhart*, 278 F3d 947, 957 (9th Cir 2002). The ALJ can reject the opinion of a treating physician in favor of the conflicting opinion of another treating or examining physician if the ALJ makes "findings setting forth specific, legitimate reasons for doing so that are based on substantial evidence in the record." *Id* at 956-57, quoting *Magallanes*, 881 F2d at 751. If the opinion of a treating physician is not contradicted, then the ALJ must give clear and convincing reasons supported by substantial evidence to reject it. *Id* at 957.

An ALJ may reject any physician's opinion which is unsupported by the record as a whole, including clinical findings, treatment notes, contrary medical opinions, or a claimant's daily activities. *See Bayliss v. Barnhart*, 427 F3d 1211, 1216-17 (9th Cir 2005); *Batson*, 359 F3d at 1195. A treating physician's opinion is given controlling weight only when his opinion is well supported by "medically acceptable clinical and laboratory diagnostic techniques and is not inconsistent with the other substantiated evidence" in the record. *See* 20 CFR § 404.1527(d)(2). An ALJ also may reject a medical opinion premised on a claimant's discredited subjective complaints. *See Tonapetyan v. Halter*, 242 F3d 1144, 1149 (9th Cir 2001).

///

**B.**    **Analysis**

The Commissioner concedes that the ALJ erred by concluding that Dr. Rinehart was not McConkey's treating physician. Dr. Rinehart saw McConkey on four separate occasions in the three months prior to the hearing. Tr. 27, 29, 30, 31. During this time Dr. Rinehart obtained a

history, performed a physical examination, reviewed the medical records, prescribed pain medications and made therapeutic recommendations. *Id*. However, the Commissioner contends that the ALJ's error on this point was harmless because of the other reasons given for rejecting Dr. Rinehart's opinion.

The ALJ also rejected Dr. Rinehart's April 29, 2004 opinion because it "lacks strong persuasive weight" due to its "brief and conclusory" nature. Tr. 17. The opinion is indeed brief. The ALJ need not accept a treating physician's opinion which is "brief and conclusionary in form with little in the way of clinical findings to support [its] conclusion." *Young v. Heckler,* 803 F2d 963, 968 (9th Cir 1986).

The ALJ also found that Dr. Rinehart's opinion was not supported by "medically acceptable clinical or laboratory techniques [or] other substantial evidence." Tr. 17-18. To the contrary, Dr. Rinehart's opinion concerning the cause of McConkey's disability is supported by medically acceptable clinical and laboratory techniques. In particular, Dr. Rinehart's chart notes dated July 28, 2004, refer to an MRI from November 26, 2002, which "reveals abnormal signal from T 6, 7, 8, & 9 consistent [with] prior fracture." Tr. 27, 143-45. That MRI, as well as a bone scan, indicated "multilevel thoracic spine degenerative arthritic findings that are rather advanced for a patient of this age" and consistent with "benign degenerative spondylosis." Tr. 144, 148, 153. These laboratory results were consistent with Dr. Rinehart's examination and recommendations. Based on his erroneous conclusion that Dr. Rinehart was not a treating physician, it appears that the ALJ overlooked the actual treatment history with Dr. Rinehart.

In addition, both McConkey's original primary care physician, John Ford, M.D., and pulmonary specialist, Kishore Pathial, M.D., agreed that McConkey suffered from thoracic pain.

7 - FINDINGS AND RECOMMENDATION

Tr.150-51, 160, 175-76.  In October 2002, Dr. Ford attempted an EKG study which he

terminated due to increased chest pain.  Tr.172.  He then referred McConkey to Dr. Pathial for

his chest pain.  Imaging studies and blood tests ruled out cancerous or cardiac causes.  Tr. 139-

148, 153-56, 158.  In December 2002, Dr. Pathial concluded that McConkey's chest and back

pain was secondary to a fracture of the thoracic spine, but was uncertain whether it was caused

by "bony metastases or possibly an entity such as multiple myeloma or some benign fractures."

Tr. 213.  McConkey then continued treatment with Dr. Ford.  In February 2003 Dr. Ford

determined that McConkey had decreased ranges of cervical motion in all directions due to pain,

assessed "[o]ngoing back pain related to significant arthritis and degenerative disease" and

prescribed pain medications.  Tr. 158.  He also noted that McConkey had tried to resume work,

but "simply has too much pain."  *Id.*  Although the chart notes by the various treating physicians

are based in part on McConkey's subjective reports of pain, they also confirm an objective basis

for that pain.

Furthermore, Dr. Rinehart's opinion concerning the extent of McConkey's disability is

supported by other substantial evidence in the record, in particular the Physical Capacity

Evaluation ("PCE") performed in June 2004 by Dave Dery, P.T.,  Tr. 203-09.  That PCE found

that McConkey "exhibits behaviors consistent with a full blown chronic pain syndrome" and

limited him to a maximum of six hours of sedentary work per day with a maximum of two hours

sitting and four hours standing.   Tr. 209.  If Dr. Rinehart's opinion is interpreted, as the

Commissioner apparently suggests, to mean that McConkey is so disabled that he cannot work

even one hour a day, then the PCE would be inconsistent.  However, Dr Rinehart never

suggested that McConkey is so disabled that he is essentially bed-ridden and unable to perform

any work for any period of time.  He simply said that McConkey is too disabled to work.  Unless otherwise qualified, a reasonable interpretation of this statement is that McConkey cannot work full-time, eight hours a day, five days a week.  In that respect, Dr. Rinehart's opinion is supported by the PCE.

The ALJ also noted that the reviewing physicians for the state agency concluded in June and July 2003 that McConkey could perform sedentary work.  Tr. 18, 180-85.  However, that conclusion was not based on an examination of McConkey, but instead was based only on a review of the medical records without the benefit of the conflicting PCE performed a year later in June 2004.

Therefore, the ALJ erred by concluding that Dr. Rinehart was not McConkey's treating physician and that his opinion was not supported by substantial evidence in the record.

## II.    **Credibility Finding**

The ALJ found McConkey's reports of pain and shortness of breath "disproportionate and not supported by the objective medical findings nor any other corroborating evidence."  Tr. 17.  McConkey contends that this finding was erroneous.

### A.    **McConkey's Pain Testimony**

McConkey testified that he can only stand a "maximum twenty minutes," sit "about the same" amount of time as he could stand, walk about a quarter of a mile a day, and lift 10 pounds.  Tr. 219-20.  He can drive and climb stairs.  Tr.  220.  He further testified that after sitting about 10 minutes, his arms go to sleep" and that after alternating sitting and standing for about four hours, he would "lay down."  Tr.  221-22.  He lies down at least four of his waking hours a day.

9 -  FINDINGS AND RECOMMENDATION

Tr. 222.  After walking a quarter of a mile, he needs to take a break for "ten or fifteen minutes."

Tr. 223.  He also has problems "unscrewing things or doing things with [his] hands."  *Id*.

Pushing and pulling activities hurt his back.  Tr. 225.

**B.** **Legal Standard**

When deciding whether to accept the subjective symptom testimony of a claimant, the

ALJ must perform a two-stage analysis.  In the first stage, the claimant must:  (a) "produce

objective medical evidence of an impairment or impairments"; and (b) "show that the

impairment or combination of impairments *could reasonably be expected to* (not that it did in

fact) produce some degree of symptom."  *Smolen v. Chater*, 80 F3d 1273, 1282 (9th Cir 1996)

(citations omitted, emphasis in the original).  The claimant is only required to produce objective

medical evidence of the impairment, not of the symptom itself, the severity of the symptom or

the causal relationship between the impairment and the symptom.  *Id*.  The claimant also is not

required to show that the impairment could reasonably be expected to cause the severity of the

symptom, but only that it could reasonably have caused *some* degree of the symptom.  *Id*

(emphasis added).

In the second stage of the analysis, the ALJ must assess the credibility of the claimant's

testimony regarding the severity of the symptoms.  To determine whether subjective testimony is

credible, the ALJ may rely on:

> (1) ordinary techniques of credibility evaluation, such as the claimant's
> reputation for lying, prior inconsistent statements concerning the
> symptoms, and other testimony by the claimant that appears less than
> candid; (2) unexplained or inadequately explained failure to seek
> treatment or to follow a prescribed course of treatment; and (3) the
> claimant's daily activities.

*Id* at 1284 (citations omitted).

The following factors must also be considered:  the circumstances under which the claimant testified, any contradictions or corroborations, the claimant's prior work record, the nature of any symptoms and medical treatment, daily activities, and any other factors concerning the claimant's functional limitations and restrictions.  20 CFR § 404.1529; SSR 96-7p, 1996 WL 374186, *3.  In weighing evidence of pain, the ALJ is also required to consider the "nature, location, onset, duration, frequency, radiation, and intensity of any pain," "precipitating and aggravating factors such as movement, activity, environmental conditions," "type, dosage effectiveness, and adverse side-effects of any pain medication," "treatment, other than medication, for relief of pain," "functional restrictions" and "the claimant's daily activities." SSR 88-13, 1988 WL 236011, *3-4.

"[O]nce a claimant produces objective medical evidence of an underlying impairment, an [ALJ] may not reject a claimant's subjective complaints based solely on a lack of objective medical evidence to fully corroborate the alleged severity of pain."  *Bunnell v. Sullivan*, 947 F2d 341, 345 (9th Cir 1991) (*en banc*) (citation omitted).  "While subjective pain testimony cannot be rejected on the sole ground that it is not corroborated by objective medical evidence, the medical evidence is still a relevant factor in determining the severity of the claimant's pain and its disabling effects."  *Rollins v. Massanari*, 261 F3d 853, 857 (9th Cir 2001), citing 20 CFR § 404.1529(c)(2).

If the ALJ finds that the claimant's symptom testimony is not credible, then the ALJ '"must specifically make findings which support this conclusion" and the findings "must be sufficiently specific to allow a reviewing court to conclude the [ALJ] rejected the claimant's

11 -  FINDINGS AND RECOMMENDATION

testimony on permissible grounds and did not arbitrarily discredit" it. *Bunnell*, 947 F2d at 345

(internal quotations and citations omitted). If there is no evidence of malingering, the ALJ may

reject symptom evidence only by giving clear and convincing reasons, including which

testimony is not credible and what facts in the record lead to that conclusion. *Smolen*, 80 F3d at

1281.

C.    **Analysis**

None of McConkey's treating physicians suggested malingering. Tr. 151, 158, 160-61,

165, 213. Dr. Cohen (the medical expert who testified at the hearing) also found no evidence of

malingering. Tr. 235. In addition, the DDS physicians found McConkey generally credible, but

concluded that his reported pain was disproportionate to clinical findings. Tr. 119, 183, 185.

Therefore, the ALJ had to provide clear and convincing reasons to reject McConkey's testimony.

The ALJ did not list any specific reasons for finding McConkey's testimony not

"sufficiently credible to serve as additive evidence" concerning his limitations due to pain.

Tr. 17. Instead, the ALJ simply relied on the "entire case record." *Id*. This is plain error.

However, a review of the ALJ's entire opinion reveals that he found McConkey's testimony in

conflict with several medical opinions. Even if these conflicts are deemed to be the reasons

supporting the ALJ's credibility determination, they are not clear and convincing.

After rejecting Dr. Rinehart's opinion that McConkey was too disabled to work, the ALJ

noted that the June 2004 PCE "concluded that the claimant was capable of performing light to

sedentary work." Tr. 18. The PCE did state that McConkey "demonstrates physical capacities

in the sedentary work range." Tr. 209. However, as noted above, that PCE limited McConkey

to two hours of sitting and four hours of standing and specifically stated that his work tolerances

12 - FINDINGS AND RECOMMENDATION

"are projected over an 4-6 hour workday with normal breaks."  Tr. 203, 209.  The PCE did not

conclude that McConkey could perform sedentary work for a full eight-hour work day.  By not

including that important qualifier, the ALJ misinterpreted the PCE.

The Commissioner also points out that the physical therapist suggested that "likely

symptom magnification" affected the evaluation findings and that it was unclear whether

McConkey "actively sabotaged the physical values of this evaluation."  Tr. 209.  However, the

ALJ did not mention this point in his decision.  Consequently, it cannot be raised for the first

time on appeal.  *See SEC v. Chenery Corp.*, 332 US 194, 196 (1947) ("[A] reviewing court, in

dealing with a determination or judgment which an administrative agency alone is authorized to

make, must judge the propriety of such action solely by the grounds invoked by the agency").

The ALJ also relied on the June 2003 report by the state agency reviewing physicians

who concluded that McConkey could perform sedentary work.  Tr. 18, 180-85.  However, as

previously discussed, that conclusion was based only on a review of the medical records a year

before the June 2004 PCE.

The ALJ also stated that Dr. Cohen's opinion was "consistent with the clinical record"

and "strongly supported by the evidence from treating sources."  Tr. 17.  However, this

statement by the ALJ pertained only to Dr. Cohen's opinion that McConkey did not meet or

equal any of the listed impairments.  Tr. 17, 235.  Dr. Cohen was not asked and did not opine

whether he disagreed with the extent of symptoms presented by McConkey's testimony.

Contrary to the Commissioner's contention, he did not state that McConkey could perform

lighter work than he had performed previously.  During his summary of the medical records, Dr.

Cohen stated that "*They feel* that he isn't capable of doing hard work that he had done before, but

13 -  FINDINGS AND RECOMMENDATION

that he could do lighter work." Tr. 234-35 (emphasis added). He did not state that this was also

his opinion. He was asked if "the symptoms that Mr. McConkey's described, are they consistent

with the pathology in Mr. McConkey's back?" Tr. 235. He answered: "I think so." *Id*. He also

testified that he saw no indication of malingering in the file. *Id*. Therefore, the ALJ could not

reasonably conclude from Dr. Cohen's testimony that McConkey lacked credibility concerning

the extent of his symptoms.

Therefore, the ALJ failed to provide a legally adequate basis for discounting the

credibility of McConkey.

## III.    RFC Finding

McConkey contends that the ALJ erroneously determined his RFC. A claimant's RFC is

the most he can do despite his limitations. 20 CFR § 404.1545. An ALJ must explain how the

evidence supports his determination of a claimant's RFC by assessing the claimant's physical

and mental limitations and his ability to work on a regular and continuing basis, defined as eight

hours a day, five days a week. *Id*; SSR 96-8p, 1996 WL 374184.

As discussed above, the ALJ erred by rejecting Dr. Rinehart's opinion and by finding

McConkey not totally credible regarding the extent of his pain and limitations. Furthermore, as

noted above, the ALJ misinterpreted the June 2004 PCE. As a result, the ALJ's RFC is not

supported by substantial evidence to the extent it relied on those errors.

## IV.    Questions to Vocational Expert

Finally, McConkey contends the ALJ erred in his hypothetical question to the VE

because the RFC found by the ALJ is not the RFC presented to the VE. The ALJ found that

"due to his depression and the side effects of his pain medications, the claimant will experience

at least a 25% reduction in his ability to maintain concentration, persistence and pace." Tr. 18.

However, he asked the VE to assume that he "has an average memory," his level of energy is

25% less than a normal man his age, "his level of alertness is lowered by 25%," and "his ability

to maintain focused attention would be moderately impaired instead of mildly impaired." Tr.

237-38.

The VE was not asked about McConkey's concentration, persistence and pace in those

exact words. However, the limitations presented as to concentration, energy, and alertness

sufficiently correspond to the ALJ's RFC finding of a 25% limitation in concentration,

persistence, and pace. Therefore, the hypothetical questions were not defective in that respect.

However, the ALJ's hypothetical questions basically adopted the June 2003 RFC

assessment by the state agency reviewing physicians with the addition of impaired concentration

due to pain. Tr. 18, 180-85, 238. The questions did not include Dr. Rinehart's opinion, the June

2004 PCE or McConkey's testimony. Because the ALJ provided no legally sufficient reason for

rejecting that evidence, he erred by excluding the restrictions reflected by that evidence from his

hypothetical questions. *Magallanes,* 881 F2d at 757.

## V.    Reverse or Remand

The decision whether to remand for further proceedings or for immediate payment of

benefits is within the discretion of the court. *Harman v. Apfel*, 211 F3d 1172, 1178 (9th Cir), *cert*

*denied*, 531 US 1038 (2000). The issue turns on the utility of further proceedings. A remand for

an award of benefits is appropriate when no useful purpose would be served by further

administrative proceedings or when the record has been fully developed and the evidence is not

sufficient to support the Commissioner's decision. *Rodriguez v. Bowen,* 876 F2d 759, 763 (9th Cir 1989).

Under the "crediting as true" doctrine, evidence should be credited and an immediate award of benefits directed where "(1) the ALJ has failed to provide legally sufficient reasons for rejecting such evidence, (2) there are no outstanding issues that must be resolved before a determination of disability can be made, and (3) it is clear from the record that the ALJ would be required to find the claimant disabled were such evidence credited." *Harman,* 211 F3d at 1178, quoting *Smolen,* 80 F3d at 1292. The "crediting as true" doctrine is not a mandatory rule in the Ninth Circuit, but leaves the court flexibility in determining whether to enter an award of benefits upon reversing the Commissioner's decision. *Connett v. Barnhart*, 340 F3d 871, 876 (9th Cir 2003) citing *Dodrill v. Shalala*, 12 F3d 915, 919 (9th Cir 1993) (remand for ALJ to articulate reasons for rejecting claimant's testimony and testimony of lay witness); *Nguyen v. Chater*, 100 F3d 1462, 1466-67 (9th Cir 1996) (remand for ALJ to consider claimant's testimony about asthma); *Byrnes v. Shalala*, 60 F3d 639, 642 (9th Cir 1995) (remand for further findings regarding the claimant's credibility); *Bunnell v. Sullivan*, 947 F2d 341, 348 (9th Cir 1991) (*en banc* court affirmed remand where ALJ "failed to explain with sufficient specificity" the basis for rejecting the plaintiff's claims of disabling pain).

As discussed above, the ALJ made several errors. He first erred by giving no weight to Dr. Rinehart's opinion. However, a doctor's statement about a claimant's ability to work is not a proper medical source opinion, but an administrative finding reserved to the Commissioner. SSR 96-5p, 1996 WL 374183, *1-2. Disability has both a medical and vocational component. *See* 20 CFR § 426.960. Because a medical source does not have the expertise to comment on the

16 - FINDINGS AND RECOMMENDATION

vocational component of disability, a statement by a medical source that a person is unable to work is not accorded much weight. *See* 20 CFR § 416.927(e)(1). The ALJ must consider medical opinions about a claimant's condition and functional limitations, along with all other evidence in the record, to determine whether a claimant is disabled under the Social Security Act. SSR 96-5p.

However, the other errors committed by the ALJ do resolve all issues and compel a determination of disability or demonstrate that further proceedings would serve no useful purpose. The ALJ erred by failing to give clear and convincing reasons for finding McConkey not credible. A remand is generally indicated for further findings regarding the claimant's credibility. However, in this case, nothing in the record provides any basis to cast doubt on McConkey's credibility. None of his treating doctors questioned his credibility or suggested malingering; Dr. Cohen found his testimony concerning his symptoms consistent with the pathology of his back; and the record contains corroborating evidence from his spouse. Tr. 92-103. Thus, McConkey's testimony should be credited as true.

If credited as true, the limitations described in McConkey's testimony resolve all outstanding issues. According to McConkey, he must lie down after alternating sitting and standing for about four hours and regularly lies down at least four hours a day. The VE testified that requirement that a person be able to lay down on the job 25% of the time (two of eight hours) would eliminate competitive employment. Tr. 240. Furthermore, the PCE from June 2004 confirms that McConkey is only able to work a six-hour day.

17 - FINDINGS AND RECOMMENDATION

Thus, all of the requirements of the "crediting as true" doctrine are satisfied. Because there are sufficient findings to establish disability if the improperly rejected evidence is credited as true, this court should exercise its discretion to remand for an award of benefits.

## RECOMMENDATION

Based on the foregoing, the case should be REVERSED and REMANDED to the Commissioner pursuant to Sentence Four of 42 USC § 405(g) for the calculation and award of benefits.

## SCHEDULING ORDER

Objections to the Findings and Recommendation, if any, are due by April 21, 2006. If no objections are filed, then the Findings and Recommendation will be referred to a district court judge and go under advisement on that date.

If objections are filed, then a response is due within 10 days after being served with a copy of the objections. When the response is due or filed, whichever date is earlier, the Findings and Recommendation will be referred to a district court judge and go under advisement.

DATED this 4th day of April, 2006.

s/ Janice M. Stewart____
Janice M. Stewart
United States Magistrate Judge

18 - FINDINGS AND RECOMMENDATION